## SMITH and others *vs.* BRACKETT.

The exemption of property under the act relative to homestead exemptions is a mere personal privilege, which the statute secures to the debtor, and to his widow and children after his decease, which does not run with the land, and which cannot be transferred to another with the land.

The statute does not exempt the property from becoming *bound* and charged by a *judgment*, but from a *sale* on execution, only, so long as the exemption shall continue in force.

A full and explicit waiver of the exemption will determine the exemption, to all intents and purposes, and leave the property liable to be sold on any execution issued upon the judgment, the same as though no such exemption had ever existed. It will remove the only obstacle to the complete enforcement of the lien and charge created by the judgment.

A judgment against the owner of the homestead will have priority over a mortgage subsequently executed by him, as a lien upon the premises.

THIS was a controversy submitted, without action, for the decision of the court, under section 372 of the code of procedure. On the 1st day of September, 1857, Patrick Burns filed in the office of the clerk of Livingston county, a notice under the act of April 10, 1850, entitled "An act to exempt from sale on execution the homestead of a householder having a family," stating that he designed certain premises therein described to be held as a homestead; that the value of the premises did not exceed $1000; and they were occupied by Burns as a residence, he being a householder and having a family. In August, 1858, the plaintiffs, as copartners, were creditors of the said Patrick Burns, in the sum of $923.84, for payment of which they held certain personal property as collateral security, but not sufficient to pay the debt in full. The claim was sent to Messrs. Ward & Colt, of Geneseo, attorneys, for prosecution, and Burns notified thereof. It was agreed between Burns and wife, and Messrs. Ward & Colt, as such attorneys, that Burns with his wife should execute a mortgage upon said real estate for the sum of $787.16, as security for the payment of the some, and at the same time he represented to Ward & Colt that there were no judgments against him, and that the personal property

Smith *v.* Brackett.

aforesaid should be given up to said Burns, and all personal claim against him discharged, and the plaintiffs rely on said mortgage for the collection of their debt. On the 18th day of January, 1859, the defendant Brackett recovered a judgment in said court against Burns for $170.21, for a debt contracted after 1850, and not within the exception of section 2 of the act aforesaid, which judgment was, on the 18th day of January, docketed in Livingston county. On the 1st day of April, 1859, in pursuance of this arrangement, the mortgage was executed, and on the same day acknowledged by Burns and wife, and delivered to Ward & Colt, as agents for the plaintiffs, as such copartners, and received by them in payment and satisfaction of the debt aforesaid, and the personal property given up by them to Burns, with the approbation and consent of the plaintiffs. On the same day, and at the request of Messrs. Ward & Colt, in behalf of said plaintiffs, Burns executed a written instrument to the effect that he waived the said exemption act, in regard to the above described property, and delivered it to them. This release was afterwards by them recorded in Livingston county clerk's office on the 2d day of April, 1859. The question to be determined was whether the judgment in favor of the defendant, James Brackett, or the mortgage executed to the plaintiffs, Smith, Perkins & Co., was entitled to preference as a lien upon said real estate.

*Danforth & Terry,* for the plaintiffs.

*Benedict & Martindale,* for the defendant.

*By the Court,* JOHNSON, J. The statute (2 *R. S.* 359, § 3) provides that all judgments hereafter rendered in any court of record shall bind and be a charge upon the lands, tenements, real estate and chattels real of every person against whom any such judgment shall be rendered, which such person may have at the time of docketing such judgment, or

which such person shall acquire at any time thereafter; and such real estate and chattels real shall be subject to be sold upon execution to be issued upon such judgment.

By the act of 1850, (*Sess. Laws of* 1850, *ch.* 260, § 1,) it is provided that, "in addition to the property now exempt by law from sale under execution, there shall be exempt by law from sale on execution for debts hereafter contracted, the lot and buildings thereon, occupied as a residence, and owned by the debtor, being a householder and having a family, to the value of one thousand dollars."

Before the defendant's judgment was docketed, the debtor had filed the requisite notice to exempt his real property from sale on execution. The judgment was docketed on the 18th of January, 1859, and the plaintiffs' mortgage was executed and delivered by the judgment debtor on the 1st day of April, 1859. On the same day that the mortgage was executed and delivered, the debtor, by a written instrument, in pursuance of the statute, waived all the benefits of the same, which he had secured by the filing of his previous notice. It is insisted on behalf of the plaintiffs that the defendant's judgment never bound, or became a charge upon, the premises of the judgment debtor; or if it did, it was subject to the prior incumbrance of their mortgage.

The exemption, it will be seen, is from sale on execution only, and does not exempt the property from being bound and charged by the judgment. It seems to me, therefore, that within the very terms of the statute the defendant's judgment bound and became a charge upon the premises in question the moment it was docketed, which charge, however, could not be enforced by execution until the waiver was executed and acknowledged. This waiver, being full and explicit, determines the exemption, to all intents and purposes, and leaves the property liable to be sold on any execution which may be issued upon the judgment, the same as though no such exemption had ever existed. It removes the only obstacle to the complete enforcement of the lien and

charge created by the judgment. This exemption would also cease and determine, undoubtedly, as it seems to me, without any waiver, whenever the owner who had secured it in his favor should cease to occupy it as a residence, or to own it, during his life. The statute only applies to property thus occupied, which is owned by the debtor. The exemption is a mere personal privilege, which the statute secures to the debtor, and to his widow and children after his decease, which does not run with the land, and which cannot be transferred to another, with the land. The object of the statute seems to have been to secure a habitation to families, rather from motives of public policy than the protection of the debtor's property against the claims of his creditors. And hence it did not exempt the property from becoming bound and charged by a judgment, but from sale on execution only, so long as the exemption should continue in force. The case of *Allen* v. *Cook*, (26 *Barb.* 374,) which was, I think, correctly decided, is conclusive upon this question. The judgment, therefore, has priority over the mortgage as a lien upon the premises, and must be first satisfied.

Judgment accordingly.

[MONROE GENERAL TERM, June 2, 1862. *Welles, Smith* and *Johnson,* Justices.]