S. Samuel Di Falco, S.
The accounting executor is also the sole legatee under the will. Objections to his account have been interposed by the Commissioner of Social Services of the City of New York, based upon the rejection of the claim of the department in the amount of $5,348.28. The hospitalization of the decedent, the time period, and the applicable rates are not *512 disputed. Indeed, in a separate motion to strike out the objections, the executor sets forth in his moving papers the hospitals in which the decedent was treated, the periods of time, the rates and the total sum. His rejection of the claim is based upon secton 369 of the Social-Services Law, which states that “ there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-live years of age or older when he received such assistance ” (subd. 1, par. [b]). It is undisputed that the decedent was under the age of 65 years and thus not within the exception. The Department of Social Services, on the other hand, contends that the medical assistance in this case was not “ correctly paid ” because the decedent had property which she failed to disclose to the department and because she misrepresented the true facts by stating that she had no such property, and that section 369 therefore, does not bar a recovery.
The account reports that the decedent owned a one-family three-room house in the Town of Kent, Putnam County, and that the executor sold that property to a sister of the decedent for the sum of $6,000. The executor contends that the ownership of this realty did not render the decedent ineligible for medical assistance because this property constitutes a homestead and as eligibility is defined in the Social Services Law it is explicitly provided that a homestead ‘ ‘ shall be exempt and shall neither be taken into consideration nor required to be applied toward the payment or part payment of the cost of medical care and services available under this title ” (Social Services Law, § 366, subd. 2, par. [a]).
The executor-sole legatee was a friend of the decedent and a resident of the same building where the decedent had an apartment. The records of the Social Services Department show that at the time that medical assistance was given to her, the address of the decedent was listed at 208 East 28th Street, which is in the County of New York. The accounting party actually signed the application for medical assistance to the decedent. The address given on that application is 208 East 28th Street. It states that she had no real property. In his testimony at the hearing the accounting party said that the decedent occupied the property in Kent as a residence, but had the use of an apartment on East 28th Street because it was convenient to her employment in New York. She had formerly lived in Brooklyn, but in 1965 she moved to East 28th Street. There was some effort to show that she still had a lease of the Brooklyn apartment but that point is of no significance. It does not appear *513 whether she actually had a lease of the 28th Street apartment. The accounting party attempted to show that the apartment on 28th Street was only a convenience while the decedent was working and was not her actual residence. However, it appears that she lived there from 1965 until shortly before the illness which enforced her retirement on August 31, 1966 and that she also lived there after recovering from such illness. Her actual occupancy of the premises.in Putnam County, according to the accounting party’s testimony, was on weekends and vacations. He testified also that she suffered her-first stroke 5 or 6 months before August 31, and that she spent most of those months recuperating in Kent, where her mother also was living. Although there is no direct testimony on the point, it would appear, from the city’s claim, that decedent was hospitalized during substantially all of the period between the end of December, 1966 and her death on June 10, 1967. There is no evidence of her ever having abandoned the New York apartment after August 31, 1966 or of her having resided in Kent after that date. All of the evidence points to the contrary, for she was in New York when hospitalized in December and the East 28th Street address was then given as her only address. Indeed the decedent’s will was admitted to probate upon the petition of the executor-sole legatee and upon his affirmative allegation that the decedent was in fact domiciled at the time of her death in the County of New York.
Although section 366 of the Social Services Law uses the term ‘‘ homestead ’ ’, that term is not defined in that chapter nor elsewhere in the Consolidated Laws. CPLR 5206 exempts from application to satisfaction of a money judgment a 11 lot of land, with one or more buildings thereon, not exceeding one thousand dollars in value, owned and occupied as a residence by a householder or a woman, and designated for that purpose ”. (Emphasis added.) The various subdivisions of that section refer to such real property as a homestead or an exempt homestead. CPLR 5206 was derived from the Homestead Act of 1850 (see 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5206.02), and there appears to have been little need for judicial definition of the term. The court pointed out in a very early case that the ‘ ‘ exemption of the land from sale, upon execution, depends not only upon the exemption notice filed and recorded, but upon the fact that the plaintiff, at the time of sale was a householder, having a family in the actual occupation of the premises ”. (Cooke v. Newman, 8 How. Prac. 523, 525.) The term seems to have had little involvement in subsequent New York litigation. (See 18 Abbott, N. Y. Digest, pp. 656-668 *514 and 19 Words and Phrases, pp. 598, 602, for paucity of New York cases.) Actual occupancy of the property is generally a requisite to its exemption as a homestead. (Haskins, Homestead Exemptions, 63 Harv. L. Rev. 1289, 1296 ; State Homestead Exemption Laws, 46 Yale L. J. 1023, 1028.) Of course a term such as that may vary in meaning in different statutes or contexts. (Homestead Exemptions, Haskins, 63 Harv. L. Rev. 1289, 1290.) In using such a term in the Social Services Law, without any attempt to further define it, it is fair to assume that the Legislature was using it in the sense in which it has long been used in our law. In that sense the term “ homestead ” means the dwelling which was actually occupied as a residence by the person who received medical assistance. This decedent occupied an apartment in the County of New York, which was given as her address in her relations with the city and as her domicile by the petitioner. It seems clear that the decedent used the property outside of New York only as a vacation or weekend retreat and that her real residence was in New York County.
The property in Kent was not used by the decedent as her residence; she did not regularly occupy the property; it cannot qualify as homestead property within the meaning of section 366 of the Social Services Law.
The medical assistance was given to the decedent on the basis of the information set forth in the application for such assistance. Had the decedent — or her agent — disclosed ownership of the Kent realty, the decedent Avould not have been eligible for medical assistance under section 366 as it existed in December, 1966. There is no need to inquire whether the failure to disclose this property was deliberate and fraudulent or unintentional and innocent. The prohibition against recovery of the amount of medical assistance from the estate of one to whom it was given covers only assistance “ correctly paid ” (§ 369). It is to be noted that the text of paragraphs (a) and (b) of subdivision 1 of section 369 was taken almost verbatim from the Federal Social Security Act (U. S. Code, tit. 42, § 1396a) which in turn represents a somewhat broadened version (see 1965, U. S. Cong. & Admin. News, p. 2020) of earlier provisions in the Social Security Act (U. S. Code, tit. 42, § 302, subd. [a], par. [11], subpar. [E]; § 1382, subd. [a], par. [15], subpar. [D]), all of which use the terms “correctly paid” or “incorrectly paid.” Thus the Federal statutes leave to the State or its agency the formulation of the rules for recovery of assistance granted to its residents except as it has laid doAvn the general rule that the State plan must in specified instances *515 prohibit recovery except for amounts incorrectly paid. The New York rule as expressed in section 369 complies with the Federal mandate. Thus section 104 of the Social Services Law, which permits recovery from the estate of a recipient, is limited by section 369 in respect of medical assistance to such as is not correctly paid, which means, not in accordance with the law.
The ownership of the improved parcel of realty would have rendered the decedent ineligible for assistance under the Social Services Law. It is a fact which should have been disclosed to c-the Department of Social Services. If in fact her principal residence was in Putnam County and not in the City of New York, that fact should have been disclosed to the city. The assistance given to her was thus not ‘ ‘ correctly paid ’ ’, and there is no restriction against recovery from her estate of the sum incorrectly paid.
The first objection to the account of the executor is therefore sustained, and the claim, which is not disputed as to amount, is allowed. The second objection is to payment on the legacy without reserving funds for payment of the claim, and it is sustained. The executor will be surcharged in the amount of the distribution.
The over-all request for allowance of counsel fees is reasonable and compensation may be paid to them as requested.
The separate motion for dismissal of the objections is denied.