**In re Evelyn Frances THOMAS, Debtor.**

**Bankruptcy No. 82–B–20678.**

United States Bankruptcy Court,
S.D. New York.

Feb. 3, 1983.

Miriam Teitelbaum, New York City, trustee.

Kenneth Busman, White Plains, N.Y., for debtor.

Teitelbaum & Gamberg, P.C., New York City, for trustee.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in this Chapter 7 case objects to the homestead exemption claimed by the debtor in her bankruptcy petition on the ground that the property in question is not occupied by the debtor as a principal residence. The debtor concedes that she does not occupy the marital home, but argues that she was driven out of the home by her husband's conduct, which, among other things, resulted in a non-judicial separation agreement that entitles her husband to "exclusive possession, use, and occupancy of the premises." The debtor also contends that the trustee's objection was not timely filed. Therefore, the two issues presented for determination are whether a debtor who does not occupy the marital residence herself, but whose husband continues to occupy the premises, may claim the homestead as an exemption in the context of her bankruptcy proceeding, and whether the trustee filed a timely objection to the exemption.

## BACKGROUND

The debtor's relationship with her husband is a dismal history of cruelty and abuse. The circumstances surrounding her marriage are extensively set forth in an affidavit the debtor submitted in support of her exemption as well as in the memorandum of law submitted on her behalf. Briefly stated, Evelyn Thomas has been married to her husband Darden twice, the first time from 1971 through 1975, and the second time from 1978 to the present. Both marriages have been fraught with extreme physical and emotional abuse. Indeed, the first marriage ended in divorce on the grounds of cruel and inhuman treatment after an order of protection was obtained against Darden Thomas, who had threatened the debtor with a loaded gun. Thereafter, Mr. Thomas, who throughout the first marriage had been an alcoholic, sought treatment and recovered to the extent that the debtor believed him to be a reformed man. They remarried on September 12, 1978 and purchased the homestead in question, located at 259 Abbott Avenue, Elmsford, New York. Unfortunately, this second marriage degenerated to the same level of violent physical beatings and emotional abuse that had ended the first turbulent marriage. On two occasions in early 1982, Darden Thomas physically threw the debtor out of the house and told her not to return.

Finally, in May, 1982 the debtor consulted an attorney to obtain advice concerning her matrimonial difficulties. Thereafter, on June 17, 1982, Evelyn and Darden Thomas executed a Separation Agreement, the terms of which provide that Darden Thomas would remain in physical occupany of the

residence for no more than two years, during which time he would pay the mortgage, taxes and household expenses. The terms of the agreement reflected Mr. Thomas' insistence that he would not be the one to vacate the home and his veiled threat that, should the debtor choose to remain on the premises, she might be physically thrown out at his whim, as had been her experience twice before. The debtor appears to have had little choice but to accept the terms of the agreement.

Soon after the separation, Darden Thomas defaulted on the mortgage. He pressured the debtor into cosigning a loan that he obtained to pay the mortgage arrears, and she also incurred other debts to help his failing business. The debtor's financial situation deteriorated. In September, 1982 she sought advice from her attorney regarding the possibility of filing a petition in bankruptcy. It was during these discussions that her husband harassed her and threatened her life in an attempt to coerce her into cosigning additional loans. As a result of these threats, the debtor obtained a temporary order of protection from the Family Court, Westchester County, on September 29, 1982, more than three months after she had vacated the marital residence. In light of these circumstances, it is hardly surprising that the debtor declined to return to the marital residence, even at the risk of losing the homestead exemption because of her non-occupancy of the premises in question.

Thereafter on November 10, 1982 the debtor filed a Chapter 7 petition in bankruptcy which constituted an order for relief, pursuant to 11 U.S.C. § 301 of the Bankruptcy Code. In her petition, the debtor claimed ownership of the Elmsford marital residence that is the subject of her asserted homestead exemption, but stated that she resides at 126 Fisher Avenue, Eastchester,

New York, prompting the trustee's objection to the exemption. A Notice of Meeting of Creditors had been mailed by the court to all creditors listed in the debtor's schedules and other parties in interest, including the trustee, instructing them to file any objection to the debtor's claim of exempt property within fifteen days of the date set for the meeting of creditors. The meeting was scheduled for December 13, 1982; fifteen days from that date would set the deadline at December 28, 1982. The trustee has indicated that she filed her objection to the homestead exemption after the December 13, 1982 creditor meeting, in her report of the minutes relating to that meeting, as well as voicing her objection on the record at the same meeting. Subsequently, the trustee filed a notice of motion and application with the court on January 5, 1983, requesting entry of an order declaring the homestead exemption null and void. Therefore, the debtor contends that the necessity of the debtor's occupancy of the marital premises in order to benefit from the homestead exemption is at issue, as well as the question concerning the timeliness of the trustee's objection.

## DISCUSSION

### Allowance of the Homestead Exemption

■ Since September 1, 1982, New York State has "opted out" of the federal exemptions set forth in 11 U.S.C. § 522(d) of the Bankruptcy Code. A debtor who wishes to exempt a principal residence from the satisfaction of his debts may do so pursuant to Code § 522(b)(2)(A), which authorizes the debtor to exempt from property of the estate any property that is exempt under State law.[1] New York State has amended the Debtor and Creditor Law by enacting a new Article 10–A entitled Personal Bankruptcy Exemptions. Section 282 of Article

---

1. § 522. Exemptions.

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the debtor ...

      \*     \*     \*     \*     \*     \*

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this

section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place;

10–A allows the debtor to exempt a homestead in accordance with the law set out in New York CPLR § 5206, pertaining to the real property exemption from satisfaction of money judgments. That statute states, in pertinent part:

"§ 5206. Real property exempt from application to the satisfaction of money judgments.

(a) Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, *owned and occupied as a principal residence,* is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:

1. a lot of land with a dwelling thereon, . . ." [Emphasis added]

Actual occupancy of the property is generally a requisite to its exemption as a homestead. In the early case of *Smith v. Brackett,* 36 Barb. 571, 574 (Sup.Ct.1862), the court discussed the homestead exemption, provided for in the Homestead Act of 1850, from which the present exemption statute derives, stating that "[t]his exemption would also cease . . . whenever the owner who had secured it in his favor should cease to occupy it as a residence, or to own it, during his life. The statute only applies to property thus occupied, which is owned by the debtor." See also, *Cook v. Newman,* 8 How.Pr. 523 (Sup.Ct.1853); See also generally, 40 *Am.Jr.*2d, Homestead § 72; 40 *C.J.S.* Homestead § 33. The present exemption statute consistently reflects this view in subsection (c) of CPLR § 5206 which states:

"(c) Suspension of occupation as affecting homestead. The homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, . . . ."

In the case of *In re Estate of Galcia,* 59 Misc.2d 511, 299 N.Y.S.2d 723 (Surr.Ct.N.Y. Cty.1969), a decedent's estate sought to avoid reimbursing the Department of Social Services for medical services received by the decedent under Social Services Law § 366. At issue was whether the value of a homestead was properly exempted when the Department calculated the decedent's eligibility for medical assistance. The court defined homestead to mean the "dwelling which was actually occupied as a residence by the person who received medical assistance." 299 N.Y.S.2d at 726. The court determined that the property in question, located in Putnam County, was used primarily as a vacation home and weekend retreat, while the decedent actually resided in a New York City apartment. Accordingly, since the decedent had not regularly occupied the Putnam County property, it could not be the subject of a homestead exemption.

The circumstances in *Galcia,* supra, are clearly distinguishable from the instant case. The debtor owns and had regularly occupied the Elmsford property for four years until her husband's conduct virtually forced her out of the home less than five months prior to filing her petition in bankruptcy. Indeed, it has been held in other jurisdictions that

"where the abandonment of the home by the wife may forfeit her homestead rights, and such rights may not be lost except by her act, the general rule is that where she leaves the home under the compulsion of her husband, exercised by force or threats or by legal process, she loses none of her rights in the homestead," 129 A.L.R. 305; 42 A.L.R. 1162.

It would be extremely inequitable if the debtor's husband could assert a homestead exemption under CPLR § 5206, if he were to file a bankruptcy petition, while his conduct would serve to preclude the debtor from claiming such an exemption herself. Darden Thomas would retain his potential homestead exemption because of his cruel and violent behavior, the consequence of which was to drive the debtor out of her own home. The debtor should not be penalized for agreeing to vacate the homestead property less than five months prior to filing her petition in a desperate effort to find some emotional peace and physical safety. Had the debtor been the spouse who re-

mained in the home, her homestead exemption would not have been the subject of an objection. There are some jurisdictions which allow the marital residence to be exempted as a homestead by a spouse who vacates the premises due to a separation agreement, although other jurisdictions permit no exemption if there has been a division of property pursuant to the separation agreement. See 40 C.J.S. Homestead § 161. In the case at bar, the separation agreement did divide property between the parties, but in any event, New York State courts have not as yet specifically addressed the issue of the right to claim the homestead exemption when one spouse vacates the premises due to a marital separation agreement.

In a recent case, *Fontana v. Fontana,* 89 A.D.2d 843, 453 N.Y.S.2d 23 (Sup.Ct.1982), the court denied a homestead exemption for a defendant husband whose wife had obtained a money judgment against him for child support payments. He had vacated the marital premises approximately two and one-half years prior to the court proceeding and was living in California. Citing *Galcia,* supra, the court held that "[i]nasmuch as he does not occupy the property as his principal residence he is precluded from invoking the homestead exemption to prevent plaintiff from enforcing her money judgment against him." 453 N.Y.S.2d at 24.

The facts in *Fontana* are distinguishable from the present case. The debtor in this case vacated the Elmsford property less than five months prior to filing bankruptcy, to protect her physical and emotional well being. The circumstances surrounding the defendant Fontana's departure from his marital home were not discussed in that opinion. However, a more appropriate rationale for the court's holding in that case is that alimony and support claims are not defeated by exemptions granted by statute, on the theory that these claims are not debts within the meaning of exemption statutes. See generally 54 A.L.R.2d 1428. In *Jackson v. Jackson,* 194 Misc. 134, 86 N.Y.S.2d 516, 517 (Sup.Ct.1948) the court denied an exemption claimed for certain insurance policies, and stated:

"There is no question that alimony is an exception to the provisions of any statute of exemption. The purpose of such statutes is to preserve to the beneficiary the benefits thereof for the support and maintenance of himself, his wife and children and that purpose is served when part of the benefits thereof are devoted to the support of his wife and children."

See also, *Amersbach v. Amersbach,* 200 Misc. 465, 110 N.Y.S.2d 222 (City Ct.1951); *Boatswain v. Univac Div., Sperry Rand Corp.,* 65 Misc.2d 348, 317 N.Y.S.2d 493, aff'd, 71 Misc.2d 939, 338 N.Y.S.2d 120 (Sup. Ct.App.Tm.1972); *Fordyce v. Fordyce,* 80 Misc.2d 909, 365 N.Y.S.2d 323 (Sup.Ct.1974). Therefore, it is clear that even if the husband in *Fontana,* supra, had *not* vacated the marital homestead, his occupancy of the homestead would not, under New York law, exempt it from his wife's claim for child support arrears.

Finally, it is interesting to note that in the recent case of *First Federal Sav. and Loan Ass'n. of Rochester v. Brown,* 78 A.D.2d 119, 434 N.Y.S.2d 306, 310 (Sup.Ct. 1980) the court observed that "[t]he exemption of the land comprising the homestead is only an exemption from sale or execution *while the premises are occupied by the debtor or his family,"* [speaking of a judgment debtor.] (Emphasis added). Accordingly, Mrs. Thomas, the debtor herein, could claim her homestead exemption on the basis that the property was occupied by a member of her family, i.e., her husband.

■ Based on the foregoing discussion, this court concludes that the debtor is entitled to claim a homestead exemption for the marital residence located in Elmsford, New York, notwithstanding her non-occupancy of the premises, because of the extreme conditions under which she was forced to vacate the premises and because the premises are still occupied by the debtor's family (her husband).

### *Timeliness of the Trustee's Objection*

■ An equally compelling reason for allowing the debtor to assert her homestead

exemption is that the trustee's objection was not timely filed. The trustee indicated that she noted her objection on the minute report after the December 13, 1982 creditor meeting. However, after a search of the court files as well as those of the U.S. trustee's office, no copy of this report has been found, and there is no notation on the court docket indicating its receipt. Even if the report had been received with the notation of the trustee's objection, this would not be the appropriate procedure for perfecting a formal objection to an exemption. The minute reports serve as an aid for the U.S. trustee's administrative functions. These reports do not regularly come to the attention of the judge in a manner that would alert the court to the trustee's intention to object to an exemption claimed by the debtor. When the reports are received by the chief clerk, they are routinely docketed and filed. However, until the commencement of a formal proceeding, the debtor and creditors have no way of knowing whether the trustee has pursued the objection.

In order to bring such a matter properly to the attention of the court, the trustee must make an application to the court and request a hearing on the issue, so that a final determination regarding the exemption can be entered. The trustee alerted the debtor as to the commencement of a contested proceeding when she filed her notice of motion and application with the court on January 5, 1983, requesting entry of an order declaring the homestead exemption null and void.

The problem is that the filing occurred after the bar date set in the Notice to Creditors. If the trustee needed more time to perfect her objection, she might have applied for an extension of time to file her objection prior to the expiration of the deadline. Since this was not done, the court is precluded from giving effect to the objection.

Therefore, the court concludes that the trustee's objection was not timely filed and that this procedural flaw alone would com-

promise the trustee's position. The trustee's motion is denied.

SUBMIT ORDER on notice.